# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs February 17, 2010

## LATOYA DANIELLE PATTON v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2006-A-825     Cheryl Blackburn, Judge**

_____

**No. M2009-01280-CCA-R3-PC - Filed April 14, 2010**

_____

The petitioner, Latoya Danielle Patton, appeals the Davidson County Criminal Court's denial of her petition for post-conviction relief. The petitioner, pursuant to a negotiated plea agreement, pled guilty to second degree murder, a Class A felony, and received a sentence of forty years. On appeal, the petitioner contends that her guilty plea was not knowingly and voluntarily entered due to the ineffective assistance of counsel in advising the petitioner. Following review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which DAVID H. WELLES and THOMAS T. WOODALL, JJ., joined.

Cynthia M. Fort, Nashville, Tennessee, for the appellant, Latoya Danielle Patton.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and Bret Gunn, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual Background**

The underlying facts of the case, as recited by the State at the guilty plea hearing, are as follows:

> On April 23rd, 2005, at 570 McMurray Drive here in Davidson County, on that date [the victim's] brother . . . came to the residence to find out what was going on because he had not been able to contact [the victim] by phone during

the day. He came in and saw [the victim] deceased, a murder victim. There were obvious multiple stab wounds there in the apartment. He called the police, and the police began investigating.

That same day from asking around and doing their jobs they came to find that [the petitioner] was somebody that was acquainted with the [victim] and began to interview her. Initially she denied any knowledge of what took place, but eventually she did admit she had killed [the victim]. She said that she was a crack cocaine user, that she bought crack cocaine from [the victim], but it came to a point where she was out of money and the victim would not give her anymore. So she was there in the apartment and decided to kill him and take his crack cocaine. So she turned the water on in the kitchen so he [could not] hear in the living room and got a knife from the drawer and then went over to him in the living room, hiding the knife, and got close to him and stabbed him and ended up stabbing him a total of eighteen times with about three or four different implements that she found there. She took the crack cocaine and then went back to 189 Wallace Road, which was her residence. She told the police that they would find her clothes that had blood on them and her shoes and the empty pill bottle that the crack cocaine was in back at that location. And the police went there and did find that.

Based upon the foregoing, the petitioner was indicted by a Davidson County grand jury for first degree murder and felony murder. Subsequently, the petitioner filed a petition with the trial court to enter a guilty plea to one count of second degree murder. The agreement further provided that she would be sentenced to forty years, which was outside her statutory range. Following the court's acceptance of the plea, the petitioner was sentenced in accordance with the agreement, and it was specifically noted on the judgment form that the sentence imposed was outside her range.

Thereafter, the petitioner filed the instant petition for post-conviction relief in which she alleged that she was denied the effective assistance of counsel and that her plea was not entered knowingly and voluntarily. A hearing was held, at which the petitioner and trial counsel testified. The petitioner testified that trial counsel was the second attorney appointed to represent her and that he began his representation four or five months after the case began. According to the petitioner, she informed trial counsel that she was under the influence of drugs when she committed the murder and, further, that the victim had been abusive, controlling, and manipulative to her. She stated that she only stayed with the victim because he provided her with drugs. The petitioner also testified that she informed trial counsel that she had regular exposure to drug use as a child. She further testified that she had developed a drug habit, which she supported by trading sex for drugs. The petitioner further testified

-2-

that trial counsel told her at her first court appearance that "nine times out of ten" a jury would only convict her of manslaughter because it was a crime of passion. However, trial counsel later presented her with an offer from the State and encouraged her to accept it. The petitioner acknowledged that she made a statement to police confessing her involvement in the crime and providing details of its commission.

According to the petitioner, she accepted her guilty plea on the Friday before the trial's start date of Monday. Prior to accepting the plea, she asked the court for a continuance in order to allow her family additional time to hire a new attorney. The court denied the request. Prior to accepting the plea, the court extensively voir dired and discussed the plea agreement with the petitioner. The petitioner acknowledged that the court did, in fact, make the statements and that she stated that she understood them, but she now contends that she did not understand. According to the petitioner, she either did not remember the questions or "blanked out" during the plea hearing. She testified that it was her belief that, if she pled guilty, she "would go ahead to the prison and would file an appeal." However, according to the petitioner, she thought this meant that she would have more time to hire an attorney and that she would get another opportunity to go to trial. The petitioner testified that she did not want to seem "illiterate" before the court and "just gave up." She testified that she wanted to have the opportunity to testify before a jury.

The petitioner also testified that no mental evaluation was performed even though she and trial counsel had discussed such an evaluation. She believed that trial counsel should have "put a little bit more time in investigating" her case and learned more about her background.

Trial counsel testified that he initially met with the petitioner and, based upon her statements to him, believed that it might be possible for a jury to find her guilty of manslaughter. He related that the petitioner had discussed the victim's treatment of her and that the victim had made a move for something under the cushions prior to the petitioner stabbing him. However, upon receiving discovery, trial counsel's opinion of the merits of the case changed. Specifically, the petitioner's statement to police was problematic as the petitioner essentially stated that she killed the victim in order to get crack cocaine. After reviewing discovery, trial counsel stated there was "no doubt" in his mind that the petitioner would be convicted of first degree murder if she went to trial. According to trial counsel, he informed the petitioner that he did not believe she could win the case in light of her statement. He testified that, despite this, he told the petitioner that if she wanted to go to trial, he would "give her [his] best effort." However, he did advise her to take the plea offer.

On the day the plea was entered, trial counsel went through the entire agreement with the petitioner. He testified that she did not show any sign of confusion with the explanations

he provided to her. He further related that he had discussed the right of appeal and informed the petitioner that this would be her "final day in [c]ourt." He acknowledged that the petitioner's parents were upset that the petitioner was taking the plea agreement. He stated that, during the hearing, the petitioner looked back at her mother and said, "I don't want to get life."

Trial counsel testified that he had no problem communicating with the petitioner regarding her case. He stated that he saw no basis to perform a mental evaluation because he believed that she "clearly [was not] going to be found insane, either presently or at the time of the offense." He also indicated that he had hired a private investigator to assist him with the case.

After hearing the evidence presented, the post-conviction court denied relief. The petitioner has timely appealed.

**Analysis**

On appeal, the petitioner asserts that the post-conviction court erred in denying relief because trial counsel was ineffective and because the petitioner's plea was not entered knowingly and voluntarily. Although somewhat unclear from the brief, the petitioner appears to argue that trial counsel did not render the effective assistance of counsel, based upon his advice to the petitioner to plead guilty despite the fact that the facts and circumstances raised a defense of self-defense. The petitioner further contends that her plea was not knowingly and voluntarily entered because trial counsel was deficient.

In evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). In making this determination, the reviewing court must look to the totality of the circumstances. *State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995); *see also Chamberlain v. State*, 815 S.W.2d 534, 542 (Tenn. Crim. App. 1990). Indeed, a

> court charged with determining whether . . . pleas were 'voluntary' and 'intelligent' must look to various circumstantial factors, such as the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to

-4-

avoid a greater penalty that might result from a jury trial.

*Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993).

Once a guilty plea has been entered, effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea. In this respect, such claims of ineffective assistance necessarily implicate that guilty pleas be voluntarily and intelligently made. *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (citing *Alford*, 400 U.S. at 31, 91 S. Ct. at 164).

To succeed in a challenge for ineffective assistance of counsel, the petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the petitioner must establish (1) deficient representation and (2) prejudice resulting from the deficiency. In the context of a guilty plea, to satisfy the second prong of *Strickland*, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Lockhart*, 474 U.S. at 59; *see also Walton v. State*, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997). The petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceeding. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). However, this deference to the tactical decisions of trial counsel is dependant upon a showing that the decisions were made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

The issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). "A trial court's *findings of fact* underlying a claim of ineffective assistance of counsel are reviewed on appeal under a *de novo* standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d). However, *conclusions of law* are reviewed under a purely *de novo* standard, with no presumption of correctness. *Id*. at 458.

## I. Ineffective Assistance of Counsel

As noted, the petitioner's argument is somewhat unclear with regard to what factual basis she is asserting to establish the ineffective assistance claim. For clarity sake, we include the petitioner's argument verbatim.

The petitioner asserts that it was error for the trial court to find her counsel rendered effective assistance of counsel. The petitioner testified that when she first met with [trial counsel] they discussed the facts of her case and that he stated a jury would most likely return a verdict of the lesser offense of manslaughter. . . . The petitioner testified she reviewed her confession with [trial counsel] but contends that other facts and circumstances could have supported a defense of self-defense or garnered compassion from the jury for her. . . . Further, she also stated that she had no criminal record, except for a juvenile citation, and had lived on and off the streets for [eleven] adult years without any arrests or trouble. . . . Thus, she could have testified without impeachment by prior convictions.

[Trial counsel] even confirmed the petitioner's assertion that he had discussed the possibility of a manslaughter verdict but only changed his mind after reading her statement to the police. . . . He also testified that the petitioner told him the victim had reached for something under the sofa cushion which would have supported [trial counsel's] initial evaluation of the case. . . .

Presumably all of this investigation by [trial counsel] took place well before the status check the Friday before the Monday trial date. Yet, as the petitioner and [trial counsel] testified, she was not advised to waive her right to trial and plead guilty until that Friday. . . . She even requested a continuance in order to hire another attorney at that proceeding. . . .

For the foregoing reasons, the petitioner asserts "counsel's representation fell below an objective standard of reasonableness[.]"

As noted, from this, we glean that the petitioner is arguing that trial counsel was ineffective, based upon his advice to the petitioner to plead guilty rather than pursue a self-defense theory at trial.

In its written order denying relief, the post-conviction court specifically accredited trial counsel's testimony that: (1) he met with the petitioner; (2) he reviewed discovery; (3) he hired an investigator to assist in finding information beneficial to the defense; (4) he did not believe a mental evaluation was necessary based upon his communications with the petitioner; and (5) the facts of the case were "strongly against" the petitioner. As had been noted by this court multiple times, it is the province of the trier of fact to make the required credibility determinations. On appeal, we will not reweigh or reassess the weight given to those determinations which the post-conviction court makes with regard to credibility.

-6-

Accrediting trial counsel's testimony, we find nothing in the record which preponderates against the post-conviction court's determination that trial counsel was not deficient for failing to encourage the petitioner to pursue a theory of self-defense rather than to plead guilty. The record supports trial counsel's determination that the facts of the case were strongly against the petitioner. In her own statement, the petitioner basically stated that she stabbed the victim when he failed to supply her with more drugs. She indicated that she turned on the water to hide the noise of her getting the knife, hid the knife in her pants, asked the victim to kiss her, and then proceeded to stab him multiple times. Clearly, upon these facts, a theory of self-defense would not be supported. Thus, we agree with the post-conviction court that trial counsel was not deficient in his representation of the petitioner.

## II. Voluntary and Knowing Guilty Plea

Next, the petitioner contends that the post-conviction court erred in determining that she knowingly and voluntarily entered her guilty plea. She relies upon the facts that: she had no previous experience with the criminal justice system; the bargain she received was not "great" for a first time offender; and, at the post-conviction hearing, she maintained that she did not understand the guilty plea proceedings despite her assertions to the contrary at the guilty plea hearing. She contends that she simply "blacked out" during the plea hearing and did not understand the consequences of entering the plea.

In its written order denying relief, the post-conviction court specifically stated:

Trial counsel . . . testified that he had thoroughly explained to [the petitioner] the nature and consequences of the plea and that he explained to her the plea would be the last step in her case. Again, the Court credits trial counsel's testimony. The Court find that the transcript of [the petitioner's] plea hearing belie her claims. [The petitioner] did not passively respond to questions in a yes or no fashion; in fact, at one point [the petitioner] informed the Court that she had asked trial counsel questions about her release eligibility.

During the plea hearing, [the petitioner] affirmatively responded that her trial counsel had explained to her that she was pleading out of range; trial counsel had thoroughly discussed with her the facts of her case and the investigation that had been made; trial counsel went over every point on the plea petition and answered all her questions; she was satisfied with the work of trial counsel and he had performed everything she had wanted him to do on her behalf; and that she understood that by entering her plea she was waiving her right to trial where she may have been convicted of a lesser offense and

waiving her right to appeal. The Court explicitly informed [the petitioner] that if she enters a plea, the judgment would be final. The State recited the facts that would be presented at trial based upon the statements [the] petitioner provided to police and [the petitioner] concurred with the recitation of the facts.

After a thorough review of the record, we find nothing which preponderates against the post-conviction court's findings. At the guilty plea hearing, the trial court conducted an extensive voir dire of the petitioner prior to her entering the plea. The petitioner specifically stated that she wanted to enter the plea. The court specifically explained that the petitioner was receiving a forty-year sentence to be served at 85% and that the sentence was outside of the petitioner's range. The transcript further reflects that: the petitioner stated that she understood the sentence; trial counsel had explained the agreement to her; she was not on medication; and she knew that she did not have to plead guilty. As noted by the trial court, the petitioner's assertions on appeal are simply not credible, based upon her testimony at the guilty plea hearing. Thus, our review of the record affirmatively demonstrates that the petitioner's plea "represent[ed] a voluntary and intelligent choice among the alternative courses of action open to the [petitioner]." *See Alford*, 400 U.S. at 31.

## CONCLUSION

Based upon the foregoing, the denial of post-conviction relief is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE